IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MAXUS REALTY TRUST, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06-0750-CV-W-ODS |
| v. ) | |
| ) | Civil Action |
| RSUI INDEMNITY COMPANY, ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF MAXUS REALTY TRUST, INC.'S OPPOSITION TO RSUI'S MOTION FOR LEAVE TO DESIGNATE BRIAN JARVINEN AS AN EXPERT WITNESS

Plaintiff Maxus Realty Trust, Inc. ("Maxus") opposes RSUI Indemnity Company's ("RSUI") Motion for Leave to Designate Brian Jarvinen ("Jarvinen"), a meteorologist, as an expert witness three and half months after the passage of its expert witness deadline. Maxus opposes RSUI's late designation of its expert witness on the basis that RSUI has not shown good cause to request an extension of time, nor has it shown that its failure to meet the Court's deadline for designation of experts was harmless or substantially justified. In support of its opposition, Maxus shows the Court as follows:

**I.  FACTUAL BACKGROUND**

Maxus filed its Complaint against RSUI on September 7, 2006 alleging breach of contract and vexatious refusal for RSUI's failure to indemnify Maxus for damages suffered at its property as a result of Hurricane Katrina. (Complaint, Doc. No. 1). Maxus' Complaint alleges that in August 2005, the Waverly Apartments in Bay St. Louis, Mississippi suffered "significant wind damage" as a result of Hurricane Katrina. (Complaint, ¶¶ 8, 9). RSUI failed to indemnify Maxus claiming that the peril of flood is excluded under the subject RSUI policy. (Answer, Doc. No. 10).

CC 1943425v1

The Court's February 13, 2007 Scheduling Order required Maxus to designate expert witnesses it intended to call at trial on or before May 6, 2007. (Scheduling Order, Doc. No. 18). RSUI was to designate its expert witnesses on or before June 5, 2007. (Scheduling Order, Doc. No. 18). On May 7, 2007[1], Maxus designated four expert witnesses: 1) Dr. Patrick Fitzpatrick, a meteorologist, whose report concludes that hurricane-force winds occurred at least eight hours before the storm surge impacted the Waverly Apartments; 2) Neil Hall, a forensics engineer, whose report explains what property at the Waverly Apartments was damaged by wind and what by flood, and concludes that the vinyl siding on all building elevations was damaged by wind before the arrival of the storm surge; 3) David Dye, a reconstruction expert, whose report estimates the cost to repair property damaged by wind at the Waverly Apartments to be more than $7.7 million; and 4) Joseph Prelogar, a damages expert, who concludes that the Waverly Apartments lost between $600,000 and $900,000 in business interruption income as a result of Hurricane Katrina.

On June 6, 2007, RSUI designated three of its own expert witnesses, including 1) Jonathan Milton, a forensics engineer; 2) Albert Paxton, a reconstruction expert; and 3) Jeffrey Belack, a damages expert. Notably missing from RSUI's expert designation was a meteorologist.

Now more than four and half months after Maxus' designation of its experts, and specifically its meteorologist, Dr. Fitzpatrick, more than three and half months after RSUI's expert deadline passed, and after discovery has closed, RSUI asks this Court to allow it to designate Jarvinen, a meteorologist, out of time. RSUI claims that this late request was necessitated "[d]ue to information developed during discovery after expert disclosures had been

---

[1] May 6, 2007 was a Sunday.

made. . . ."  (RSUI Motion, p. 1).  Specifically, RSUI claims that it was not until the deposition of Mike McRobert, the CEO and president of Maxus Realty Trust, Inc., on July 31, 2007, that it learned that Maxus would dispute the extent of flood damage to the first floor and would argue that wind preceded the water surge causing damage to the first floor of the Waverly Apartments. (RSUI's Motion, p. 3).   RSUI has known of Maxus' claim for first floor damage, however, since at least July 2006--thirteen months before Maxus even filed this lawsuit.

RSUI's attempt to shift blame to Maxus as the reason for its request to designate Jarvinen three and half months late is flawed in two significant ways.  First, RSUI claims that it was not until McRobert's deposition that it learned Maxus would argue "that wind preceded the water surge and that some of the damage to the first floor was caused by wind."  (RSUI Motion, p. 3). Even if RSUI's assertion is correct, which Maxus denies and will show incorrect, RSUI does not explain why it waited almost two months after McRobert's deposition when it learned that Maxus would make this argument to petition the Court to allow it to designate an expert witness out of time.  When RSUI discovered this "new claim" it should have immediately petitioned the Court for an extension of time to designate its expert witness, rather than waiting an additional two months further prejudicing Maxus.

Second, it is hard to comprehend how RSUI failed to recognize the claim being made by Maxus from the beginning of this lawsuit--that hurricane-force winds came before the storm surge.  To say that Maxus waited until McRobert's deposition to identify damage to the first floor as part of its claim is incorrect.  As described more fully below, the essential part of Maxus' claim has always been that wind preceded the storm surge causing significant damage to the Waverly Apartments, including some damage to the first floor.  RSUI's explanation appears to be

pretext to overcome its concern that Paxton, its own reconstruction expert, lacks the qualifications to opine on the topic of the sequencing of wind versus flood.

Further it is clear that RSUI knew that the timing of the wind and water was an issue early on and that is why its expert Paxton spends an entire paragraph of his less than three page report providing his opinion that building damage at the Waverly Apartments initially occurred due to flooding. (Paxton Report, p. 2, attached as Exhibit 1). According to Paxton, the "waters swiftly rose at the site effectively encapsulating and flooding the entire ground level units and the first three feet of the second floor units" before the high winds came onshore. (Paxton Report, p. 2). Thus RSUI acknowledges at least as early as June 6, 2007, when it produced Paxton's report, that whether wind or storm surge came first was an essential issue to the case. Now perhaps RSUI is concerned that Paxton, a non-meteorologist, is not qualified to opine as to whether wind or water came first. Thus RSUI's need for Jarvinen.

## II.    ARGUMENT AND CITATION TO AUTHORITY

RSUI has not shown good cause for its request for an extension of time to designate Jarvinen. The Court will only extend a deadline established by a scheduling order upon good cause. *Local Rule 16.3*. RSUI is asking to the Court to allow it to designate its expert out of time. "Courts are afforded broad discretion to exclude expert witnesses who are not timely disclosed." *Goede v. Aerojet General Corp.,* 143 S.W.3d 14, 23 (Mo. Ct. App. 2004); *see also Sylla-Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 284 (8th Cir. 1995)(recognizing that the Eighth Circuit has upheld rulings precluding experts from testifying when they were not timely disclosed).

Federal Rule of Civil Procedure 16 allows the Court to set deadlines for the disclosure of evidence and to impose sanctions for failure to meet a deadline. *Looney v. Zimmer, Inc.*, 2004 WL 1918720, at *3 (W.D. Mo. August 14, 2004); *see also Firefighter's Inst. for Racial Equal. ex*

*rel. Anderson v. City of St. Louis*, 220 F.3d 898, 902 (8th Cir. 2000); Fed.R.Civ.P. 16. The Court may sanction a party by excluding its evidence, unless the failure to meet the deadline was either harmless or substantially justified. *Looney, at \*3; Firefighter's*, 220 F.3d at 902.

In *Anderson*, the Firefighter's Institute ("Firefighters") claimed it was substantially justified in not timely filing its expert report because the City's initial disclosures were insufficient. *Id.* But because Firefighters failed to raise the issue until four months after the City's initial disclosures were due, and two months after the expert report deadline, the Court found the issue was raised too late and thus affirmed the district court's striking of the report. *Id.* at 902-903.

Similar to *Anderson,* RSUI argues it should be able to designate Jarvinen out of time because it did not learn that Maxus was "disputing the extent of the flood damage to the property's first floor" until the deposition of McRobert on July 31, 2006 and thus did not know its previously designated expert witnesses would not suffice to rebut the testimony of Dr. Fitzpatrick. (RSUI's Motion, p. 3). Assuming RSUI is correct, which Maxus denies, RSUI still failed to raise the issue of this "new claim" until almost two months after it was first "discovered" at McRobert's deposition and more than three and half months after its expert deadline passed. The only explanation RSUI provides for its late request to designate a meteorologist is that it did not know Maxus intended to argue that wind preceded the water surge and that the first floor damage was caused by that wind. (RSUI's Motion, p. 3). Following *Anderson*, this Court should not allow RSUI to designate Jarvinen out of time because it waited too long after "discovering" this alleged new claim and because it provides no justifiable explanation for so doing.

Further, RSUI has not shown that its failure to meet its expert deadline is harmless or substantially justified. RSUI argues that the late designation of Jarvinen will not prejudice Maxus. (RSUI's Motion, p. 3). Since the expiration of the expert and general discovery deadlines, however, Maxus has been preparing its case for trial operating under the assumption that RSUI's only expert who would testify as to the timing of whether wind or water came first was Paxton. Maxus has reasonably approached its case differently than if RSUI had timely designated a meteorologist. To now allow RSUI to designate is meteorologist, more than three and a half months late, will necessarily prejudice Maxus as it will not only have to take time to depose this witness so late in the litigation, but it may also have to designate a rebuttal witness or ask that Dr. Fitzpatrick provide a supplemental expert report. Maxus will now have to pay its experts to review and analyze Jarvinen's report, including the hundreds of pages he cites to as alleged support for his opinion, in order to respond to it. If RSUI is allowed this late designation, Maxus may also need to conduct additional discovery, including additional third party discovery, once Jarvinen's testimony is heard. Discovery is now closed. This late expert disclosure could jeopardize the January 2008 trial date. Furthermore, allowing RSUI to so designate this witness out of time goes against the very essence of the discovery rules which eliminate surprise.

Unlike *Grechus v. TrailKing Indus., Inc.,* cited by RSUI, RSUI's proposed expert report is not merely one page, nor does it address the same issues that the parties previously briefed on summary judgment. *Grechus v. TrailKing Indus., Inc.,* 2000 WL 35528543, at *5 (W.D. Mo. May 23, 2000). Jarvinen's report is seventeen pages, with another fourteen pages of exhibits, and cites to hundreds of pages of allegedly supportive material. Jarvinen's report is clearly RSUI's attempt to rebut the testimony of Maxus' meteorologist that the hurricane-force winds preceded the storm surge. Allowing RSUI to designate Jarvinen, however, has a much greater impact on

this litigation than allowing the expert in *Grechus* because RSUI has only designated Paxton, a non-meteorologist, to rebut the testimony of Dr. Fitzpatrick. Thus allowing this late expert designation significantly impacts the course and scope of the litigation.

### A. RSUI's Failure to Follow Deadlines

Missing deadlines has been the repeated behavior of RSUI since this case was first filed. RSUI was served with this lawsuit on September 8, 2006. (Return of Service, Doc. No. 3). Despite its answer being due on September 28, 2006, an Order to Show Cause filed by the Court on November 2, 2006, Maxus' agreement not to file a Motion for Default if the answer was filed before November 17, 2006, and RSUI's motion for extension of time to answer filed November 29, 2006, RSUI did not answer the Complaint until December 8, 2006. (Order to Show Cause, Doc. No. 4; Motion for Extension of Time, Doc. No. 7; Answer, Doc. No. 10). Pursuant to the Scheduling Order, RSUI's Rule 26 disclosures were due on February 7, 2007. (Scheduling Order, Doc. No. 10). Even though Maxus did not consent to an extension of time, RSUI did not serve its disclosures until March 8, 2007. (Certificate of Service for RSUI's Initial Disclosures, Doc. No. 19). Further, Maxus served RSUI with discovery requests on April 13, 2007. (Certificate of Service for Maxus' Discovery, Doc. No. 23). After Maxus conferred in good faith with RSUI regarding its late responses, Maxus agreed to forego filing a motion to compel until May 29, 2007. RSUI still did not file its responses to discovery until May 30, 2007, more than two weeks late. Now, once again, RSUI disregards the Court's Scheduling Order seeking to designate an additional expert witness more than three and half months after its expert deadline passed.

**B.     Maxus' Claim of Wind Damage**

Maxus has argued from the start that the damage to the Waverly Apartments was caused by wind that preceded the storm surge and that its claim for damages to the Waverly Apartments, both first floor and second floor damage, is covered under the RSUI policy. In support of its claim, Maxus designated Dr. Fitzpatrick, a meteorologist, an expert qualified to discuss the timing of when the wind and water hit the property. RSUI claims, however, that flooding came first and thus Maxus' claims are not covered by its policy.

Maxus' claim for property damage to the first floor at the Waverly Apartments is a minor part of its claim. This motion is merely RSUI's attempt to cure the defect in its defense-that it has no qualified expert testimony to rebut Maxus' argument that wind preceded the storm surge causing significant damage to the Waverly Apartments, including the siding on the first floor. This is a claim that RSUI previously tried to rebut with Paxton's testimony but must now be concerned is a topic about which Paxton is not qualified to opine.

*Notice of First Floor Damage Claim*

For RSUI to claim it did not have knowledge of Maxus' claim regarding first floor damage until McRobert's deposition on July 31, 2007 is absurd. Before Maxus even filed its Complaint, RSUI was aware of Maxus' claim for damage to the first floor and its argument that wind, not storm surge, first impacted the Waverly Apartments. In fact, RSUI had knowledge as early as July 2006, thirteen months before the lawsuit was filed, from the Burns & McDonnell report provided to RSUI by Maxus that "building components below the second floor were damaged by high winds and wind-driven rain prior to high water entering the property. . . [i]t is reasonable to conclude that the first floor units at Waverly Apartments, which experienced much great[er] wind forces, likewise experienced considerable wind damage." (Burns & McDonnell Report, p. 2, attached as Exhibit 2). In fact, Susan Smith, RSUI's 30(b)(6) representative, admits

that not only did she see the Burns & McDonnell report in July 2006, but she recognized at that time that Maxus was claiming that property below the second floor was damaged by high winds and wind driven rain prior to high water entering the property. (Deposition of Smith, pp. 81-84, relevant portions attached as Exhibit 3).

Furthermore, once this litigation ensued, the joint Report of Parties' Planning Meeting, filed on February 7, 2007, shows that the discovery plan of the parties included the topic of "[c]ausation and the nature and extent of damages." (Report of Parties' Planning Meeting, Doc. No. 15). Causation obviously meaning what caused damage to the property and when.

It is also clear from discovery served by RSUI on April 27, 2007, that RSUI was aware there was an issue regarding the timing of wind and storm surge hitting the property because in Interrogatory No. 6 it asked Maxus to describe the loss or damage to the property "distinguishing between and separately identifying the loss or damage caused by or resulting from, wind, water or other perils. . . ." (Certificate of Service for RSUI's discovery to Maxus, Doc No. 24; Maxus' responses to RSUI's Discovery attached as Exhibit 4). In response, Maxus referred RSUI to the expert reports of Dr. Fitzpatrick, Mr. Hall, and Mr. Dye. (Exhibit 4). Thus assuming that RSUI overlooked Dr. Fitzpatrick's report produced earlier in May 2007, RSUI was again directed to his report at the end of May. (Exhibit 4). Dr. Fitzpatrick's report clearly spells out his opinion that hurricane-force winds severely damaged the Waverly Apartments before the storm surge hit. (Fitzpatrick Report, p.11, attached as Exhibit 5). Additionally, RSUI's Request for Production No. 12 asks Maxus to "[i]dentify all damage to the Waverly Apartments that you contend was caused by Flood . . ." and Request No. 14 asks Maxus to "[i]dentify all damage to the Waverly Apartments that you contend was caused by wind." (Exhibit 4). It is clear from these discovery requests, that RSUI understood there was an issue regarding the timing of when the hurricane-

force winds hit the Waverly Apartments as early as April 27, 2007. RSUI knew well in advance of its expert deadline that it would need an expert to address this essential issue of timing.

Further, Mr. Hall's report, produced by Maxus on May 7, 2007, includes costs for first floor damage due to wind. (Hall Report, p. 6, attached as Exhibit 6). Mr. Dye's report, also produced by Maxus on May 7, 2007, includes documentation to support a claim for damages on the first floor of the Waverly Apartments. Jim Steinle, the former director of construction for Maxus Realty Trust, testified at his July 26, 2007 deposition that the Waverly Apartments sustained wind damage to the first floor siding. (Deposition of Jim Steinle, pp. 34-35, relevant portion attached as Exhibit 7). And finally, RSUI's own expert witness, Jonathan Milton, testified that he was aware of the issue regarding the timing of the wind versus the flooding after reading the reports of Maxus' experts, Mr. Hall and Dr. Fitzgerald, in the Summer of 2007[2]. (Milton deposition, pp. 67-68, 90, 92, 139, relevant portions of the draft transcript attached as Exhibit 8).[3] For RSUI to now argue it did not have notice of Maxus' claim for first floor damage until July 31, 2007 is simply without merit.

### III. CONCLUSION

In light of RSUI having knowledge as early as July 2006 that Maxus' claim included damage to the first floor, and that Maxus has always argued that hurricane-force winds caused damage to the Waverly Apartments before the storm surge, this Court should deny RSUI's Motion to designate its expert out of time.

---

[2] Milton also testified that some first floor damage resulted from wind.

[3] Jonathan Milton's deposition was taken on October 11, 2007. As such, only a rough draft of Milton's deposition transcript was available at the time this Opposition was filed.

Respectfully submitted,

/s/ Michael J. Abrams
Michael J. Abrams      Mo. Bar No. 42196
mabrams@lathropgage.com
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2500
Kansas City, MO 64108
(816) 292-2000
(816) 292-2001 FAX
ATTORNEYS FOR PLAINTIFF
MAXUS REALTY TRUST, INC.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Courtney E. Murphy
Clausen Miller P.C.
One Chase Manhattan Plaza, 39th Floor
New York, NY 10005
(212) 805-3908
(212) 805-3939 Facsimile

George E. Wolf
Douglas S. Beck
Kelly G. Bieri
Shook, Hardy & Bacon L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550
(816) 421-5547 Facsimile
ATTORNEYS FOR DEFENDANT
RSUI INDEMNITY COMPANY

Date: October 12, 2007              /s/ Michael J. Abrams
                                    Attorneys for Plaintiff