# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MAXUS REALTY TRUST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06-0750-CV-W-ODS |
| v. | ) | |
| | ) | |
| RSUI INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## SUGGESTIONS BY PLAINTIFF MAXUS REALTY TRUST, INC.
## IN OPPOSITION TO DEFENDANT'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Michael J. Abrams      Mo. Bar No. 42196
mabrams@lathropgage.com
Amy Greenstein        Mo. Bar No. 59469
agreenstein@lathropgage.com
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, MO 64108
(816) 292-2000
(816) 292-2001 FAX

**ATTORNEYS FOR PLAINTIFF**
**MAXUS REALTY TRUST, INC.**

# TABLE OF CONTENTS

I. INTRODUCTION. ..................................................................................................1

II. RESPONSE TO RSUI'S STATEMENT OF UNCONTESTED FACTS ...........................3

III. MAXUS' STATEMENT OF ADDITIONAL FACTS. .......................................................7

IV. RSUI'S NON-COMPLIANCE WITH SUMMARY JUDGMENT STANDARDS. ..........9

    A. Motion Not Authorized By Rule 56. ......................................................9

    B. Improper Presentation Of Facts. ..........................................................11

V. CHOICE OF LAW IS IMMATERIAL AT THIS JUNCTURE. ......................................12

VI. MAXUS SEEKS COVERED DAMAGES EXCLUSIVELY ATTRIBUTABLE
TO WIND; ANTI-CONCURRENT CAUSE LANGUAGE DOES NOT APPLY
TO UNIQUE LOSSES FROM INDEPENDENT CAUSES ............................................13

    A. RSUI's Own Expert Distinguishes Between Wind Damage and Water
Damage and Acknowledges Damage below the Flood Line Attributable
Exclusively To Wind. ............................................................................14

    B. All Such Damage Attributable Exclusively to Wind—a Covered Peril—is
Recoverable, and the Anti-Concurrent Cause Provision is Inapplicable,
Where Independent Forces Caused Unique and Separate Damage. ......................15

    C. RSUI Bears the Burden of Proving That the Anti-Concurrent Cause
Provision Applies to Exclude Any Part of Maxus' Damages, and RSUI
Has Not Proven That All Damages Below the Water Line are Excluded. ...........19

VII. COVERAGE IS NOT LIMITED BY THE STATEMENT OF VALUES. ......................19

VIII. MAXUS IS ENTITLED TO CHOOSE REPLACEMENT COST VALUE. ...................21

IX. RSUI HAS NO SET-OFF FOR FLOOD INSURANCE PROCEEDS. ..........................22

X. CONCLUSION.................................................................................................24

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson Mattress Co., Inc. v. First State Ins. Co.*, 617 N.E.2d 932 (Ind. Ct. App. 1993) ..........21

*Anglin v. Gulf Guaranty Life Ins. Co.*, 956 So. 2d 853 (Miss. 2007)............................................23

*Barron v. Shelter Mut. Ins. Co.,* 230 S.W.3d 649 (Mo.App. W.D. 2007) ....................................20

*Capitol Records, Inc. v. Progress Record Distributing, Inc.*, 106 F.R.D. 25
    (N.D. Ill. 1985) ..........................................................................................................................9

*Commercial Union Ins. Co. v. Byrne*, 248 So. 2d 777 (Miss. 1971)......................................14, 19

*Commonwealth Ins. Co. v. O. Henry Tent & Awning Co*., 266 F.2d 200 (7th Cir. 1959).............10

*Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.*, 716 S.W.2d
    348 (Mo. App. 1986) .........................................................................................................12, 13

*Fair Grounds Corp. v. Travelers Indemn. Co. of Illinois,* 742 So. 2d 1069
    (La.App. 5th Cir. 1999) ......................................................................................................20, 21

*Ferguson v. State Farm Ins. Co.,* 2007 WL 1378507 (E.D. La. May 9, 2007)............................24

*Kendall McGaw Laboratories, Inc. v. Community Memorial Hospital*,
    125 F.R.D. 420 (D.N.J. 1989)..............................................................................................9, 10

*Leonard v. Nationwide Mutual Ins. Co.*, 499 F.3d 419 (5th Cir. 2007) ....................14, 17, 18, 19

*Milligan v. Chesterfield Village GP, LLC*, 232 S.W.2d 683 (Mo. App. 2007) ............................23

*Missouri Employers Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617 (Mo.App. W.D. 2004)..............23

*New Jersey Automobile Ins. Plan v. Sciarra*, 103 F. Supp. 2d 388 (D.N.J. 1998) .......................10

*Pakmark Corp. v. Liberty Mutual Ins. Co.*, 943 S.W.2d 256 (Mo. App. E.D. 1997) ....................17

*Pepper v. State Farm*, 2007 WL 1518078 (S.D. Miss. 2007) ........................................................14

*Poke v. Atlas Mutual Ins. Co.,* 760 S.W.2d 192 (Mo. App. 1988) .........................................14, 19

*Progressive Gulf Ins. Co. v. We Care Day Care Center, Inc.*, 953 So. 2d 250
    (Miss. Ct. App. 2006) ..............................................................................................................20

*Reliance Nat. Indemn. Co. v. Lexington Ins. Co.*, 2002 WL 31409576
    (N.D.Ill. Oct. 23, 2002)............................................................................................................21

ii

CC 1951418v1

*RPM Leasing Corp. v. Coleman Powermate, Inc.*, 2007 WL 3072056
(W.D. Mo. 2007) ...................................................................................................11

*Simon v. National Union Fire Ins. Co.*, 782 N.E.2d 1125 (Mass App. Ct. 2003)........................21

*Viacom, Inc. v. Transit Casualty Co.*, 138 S.W.3d 723 (Mo. banc 2004)....................................12

**Other Authorities**

David P. Rossmiller, *Interpretation and Enforcement of Anti-Concurrent Policy
Language in Hurricane Katrina Cases and Beyond,* New Appleman on Insurance:
Current Critical Issues in Insurance Law...............................................................16

7 Couch on Insurance 3d § 101:59 .............................................................................13

**Rules**

Local Rule 56.1.............................................................................................9, 11

CC 1951418v1

Plaintiff Maxus Realty Trust, Inc. ("Maxus") submits the following Suggestions in Opposition to the Motion for Partial Summary Judgment by Defendant RSUI Indemnity Company ("RSUI").

## I.  INTRODUCTION.

Maxus is the Missouri owner of the Waverly Apartments ("the Waverly"), a Mississippi apartment complex ravaged by high winds, rain and flooding during Hurricane Katrina.  In this action, Maxus seeks to recover under an excess commercial property policy issued by RSUI for those portions of the damage caused exclusively by wind.  RSUI issued approximately $190 million in coverage for 21 apartment complexes owned by Maxus, many of which are located in Missouri; the Waverly was one of only two Mississippi properties insured under the RSUI policy.

In seeking what it calls "partial summary judgment," RSUI has fundamentally misportrayed this case as an effort by Maxus to recover for flood damage from RSUI and to recover excessive or duplicative sums contrary to the terms of the policy.  RSUI is incorrect. Maxus seeks recovery for extensive wind damage to the Waverly, and RSUI's arguments that Maxus is seeking to recover (or double recover) amounts to which it is not entitled find no support in the language of the RSUI policy or the evidence.  Indeed, RSUI's motion is not even cognizable under Rule 56 for reasons explained in Section IV, *infra*.

As set forth below and as Maxus will prove at trial, the Waverly sustained extensive damage caused exclusively by wind.  The photos show—and RSUI's own expert concedes—that roofs and exterior walls were ripped away by wind and wind alone.  Maxus' evidence shows unique wind damage sustained to portions of the property that later ended up below the flood line.  Such wind damage is covered, and RSUI has failed to carry its admitted burden of proof to establish that an exclusion applies by uncontroverted material fact.

Indeed, RSUI has offered a statement of uncontroverted facts that is woefully incomplete and thereby misleading. Although there is no real dispute about the height of the flood line on the Waverly, there are factual disputes about the cause of damage to those portions of the property that eventually ended up below the flood line. A trial is required to sort through evidence showing that a covered peril (wind) and an uncovered peril (flood) separately caused different damage, as well as to resolve disputed facts about the wind damage above the flood line.

RSUI offers three other arguments in an attempt to avoid responsibility under its policy; however, in each instance, RSUI is advancing an argument unsupported by the language of its own policy.

First, RSUI argues that its liability is limited to a Statement of Value for the Waverly, but RSUI's policy contains no such limitation and explicitly states that it does not follow the form of the underlying policy with respect to limits of liability. RSUI issued a policy with a single maximum per occurrence limit of $189,417,773, which is the limit applicable here.

Second, RSUI seeks to permanently terminate Maxus' right to recover damage based on replacement cost value because the Waverly has not yet been repaired, but once again, the policy language does not support that result. Maxus has a reasonable period of time to do so and cannot be deprived of its rights because RSUI has failed to propose a claim settlement that fairly and reasonably reflects the amount owed on either a replacement cost or actual cash basis; indeed, even an actual cash value settlement first requires a determination of replacement cost, from which actual cash value can then be derived. If the parties are unable to agree and must resort to litigation as here, a reasonable period must be long enough to resolve the dispute and allow the insured to make an informed decision based on real payout values. To accept RSUI's argument

2

would reward stonewalling by an insurer. There is no basis for precluding Maxus from a replacement cost recovery as a matter of law.

Finally, with no basis whatsoever in its policy language, RSUI seeks to reduce its contractual obligation to pay for *wind* damage on a dollar-for-dollar basis by the amount Maxus received under its *flood* insurance on the Waverly. RSUI claims this extra-contractual relief is required to prevent a double recovery by Maxus, but according to Maxus' evidence, it will cost over $14 million dollars to return the Waverly to its pre-Katrina condition. The amount Maxus seeks here from RSUI, plus the amounts received on other policies, falls well below the amount required to restore the property.

## II.    RESPONSE TO RSUI'S STATEMENT OF UNCONTESTED FACTS[1]

1.     Uncontroverted.

2.     Uncontroverted.

3.     Uncontroverted.

4.     Uncontroverted.

5.     Uncontroverted.

6.     Uncontroverted.

7.     Controverted to the extent that the Occurrence Limit of Liability Endorsement in the policy issued by FSIC Insurance Corporation ("FSIC") has not been quoted accurately. RSUI Exhibit D, PRES00178, Section 1, paragraph 2.[2]

8.     Uncontroverted.

9.     Uncontroverted.

---

[1] Maxus Exhibits 1-11 are attached to these Suggestions.

[2] Where available, specific references to exhibits will be by Bates number.

3

10. Controverted. The default method of valuation under the FSIC policy is Replacement Cost. RSUI Exhibit D, PRES00149. Maxus, however, has the option to elect between replacement cost value or actual cash value for its loss. RSUI Exhibit D, PRES00165-00166, Section G(3)(c). As stated in the FSIC policy, "[y]ou may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis." RSUI Exhibit D, PRES00165-00166, Section G(3)(c). Replacement cost will not be paid, however, until the damaged property is repaired or replaced. RSUI Exhibit D, PRES00165-00166, Section G(3)(d)(1). The parties have not agreed, nor has the jury determined, the value for the insured damage and thus Maxus has not been able to determine whether it will elect replacement cost value or actual cash value for its loss at the Waverly. Maxus Exhibit 1, McRobert Deposition, p. 99.[3]

11. Controverted. The RSUI policy's Limit Insured is $189,417,773 Per Occurrence. RSUI Exhibit E, PRES00012, Number 7.

12. Controverted to the extent that Section 2, Limit of RSUI Excess Physical Damage Coverage Form has not been quoted accurately and is set forth with undisclosed omissions of entire paragraphs. RSUI Exhibit E, PRES00013-00014 (sections 4 and 5 contain paragraphs omitted without indication by RSUI).

13. Uncontroverted.

14. Uncontroverted.

15. Controverted to the extent it implies that the Statement of Values is part of the RSUI policy. *See* RSUI Exhibit E. The values listed on the Statement of Values are not the costs it would take to repair or replace the buildings to pre-loss condition with like kind and

---

[3] To the extent that Exhibits attached to RSUI's Suggestions are not complete, Maxus has designated additional portions as its own exhibit.

quality of materials. Maxus Exhibit 2, Presko Deposition, p. 75. This form does not specify a replacement cost value per building. RSUI Exhibit F.

16.     Controverted as unsupported and misleading. This fact is unsupported by a citation to the RSUI policy showing it to be a scheduled policy. The statement is misleading because not only does the testimony of one witness not change the language of the policies, but also because that same witness testified that Maxus had $191 million worth of coverage for each occurrence—a blanket policy. Maxus Exhibit 2, p. 90.

17.     Controverted as incomplete, misleading and immaterial. Milton's report states "[t]he buildings in the complex sustained damage from both wind and rising water." RSUI Exhibit G, Milton Report, p. 1. Nothing in Milton's report references damage to personal property. RSUI Exhibit G. Also misleading to the extent it implies that these two events took place at the same time. Wind preceded the storm surge by several hours. Maxus Exhibit 3, Fitzpatrick Report, p. 7.

18.     Controverted as incomplete, misleading and immaterial. All of the buildings at the Waverly were flooded, but water was not the exclusive cause of that damage. Wind caused damage before the storm surge arrived. RSUI Exhibit I, Hall Report, pp. 4, 5.

19.     Controverted as incomplete, misleading and immaterial as there is other evidence showing separate exterior wind damage to the first story units. Maxus Exhibit 4, Milton Deposition, pp. 90, 119, 123, 156. Wind caused damage before the storm surge arrived. RSUI Exhibit I, pp. 4, 5.

20.     Controverted as incomplete, misleading and immaterial. Flooding did not cause all damage to a measured height of 4-5 feet on the second story. "[B]efore storm surge reached the Waverly Apartments, wind severely damaged the building envelope and roof structure of

5

most buildings allowing wind and water to penetrate through wind-caused openings. . . . [W]ater leaking through the second floor damaged first floor ceiling insulation and drywall before storm surge reached equivalent height." RSUI Exhibit I, p. 4.

21.    Uncontroverted.

22.    Controverted as incomplete, misleading and immaterial. Flooding did not cause all damage to a measured height of 4-5 feet on the second story. "[B]efore storm surge reached the Waverly Apartments, wind severely damaged the building envelope and roof structure of most buildings allowing wind and water to penetrate through wind-caused openings. . . . [W]ater leaking through the second floor damaged first floor ceiling insulation and drywall before storm surge reached equivalent height." RSUI Exhibit I, p. 4. Further, RSUI's statement that "[v]irtually all witnesses and experts concurred with this finding" is not supported by reference to the record and is also controverted. Maxus Exhibit 4, pp. 90, 119, 123, 156; RSUI Exhibit I, pp. 4, 5.

23.    Controverted. Maxus retained Flagship Reconstruction Services as a non-testifying consulting expert to prepare an estimate to be used for settlement purposes. Maxus Exhibit 1, p. 119.

24.    Controverted as immaterial. Flagship is a non-testifying consulting expert. Flagship's estimate was $6,075,234 for "wind damages . . . only to 2nd floor units, finishes and structural repairs. Roof framing, decking, and roofing repairs [were] also included. The mechanical, electrical and plumbing repairs or replaced [were] for second floor units only." RSUI Exhibit M. Flagship's conservative estimates focused only on the second floor. Maxus Exhibit 10, Smith Deposition, pp. 83-84; Maxus Exhibit 11, Burns & McDonnell Report,

6

B&M0019-0020. Other evidence shows exterior wind damage to the first floor not within the scope of the Flagship estimate. Maxus Exhibit 4, pp. 90, 119, 123, 156.

25.     Controverted. David Dye's report included exterior first floor wind damage. Maxus Exhibit 5, Dye Deposition, pp. 92-93.

26.     Controverted. Maxus instructed Flagship to include "repairs as a result of wind damage only and no part of this cost estimate includes flood damage." RSUI Exhibit N. Further, Flagship was retained by Maxus as a non-testifying consulting expert to prepare an estimate to be used by Maxus for settlement purposes. Maxus Exhibit 1, p. 119. The first floor exterior damage was not included in an effort to facilitate a settlement between RSUI and Maxus. Maxus Exhibit 1, p. 121.

27.     Uncontroverted.

28.     Uncontroverted.

30.     Uncontroverted.

31.     Uncontroverted.

32.     Uncontroverted.

33.     Uncontroverted.

34.     Uncontroverted.

35.     Uncontroverted.

36.     Uncontroverted.

37.     Uncontroverted.

38.     Uncontroverted.

III.    **MAXUS' STATEMENT OF ADDITIONAL FACTS.**

1.     On August 29, 2005 Hurricane Katrina made landfall as a Category 3 storm in Bay St. Louis, Mississippi, where the Waverly is located. Maxus Exhibit 3, p. 5.

7

2.     During Katrina, the Waverly was subjected to 110 mph sustained hurricane-force winds for approximately 4.5 hours.  Maxus Exhibit 3, p. 5.

3.     Not only was the Waverly subjected to hurricane-force winds, but for many hours before and after Katrina made landfall, the Waverly was subject to tropical storm-force winds Maxus Exhibit 3, p. 5.  In addition to sustained winds, the Waverly was subjected to wind gusts ranging from 50 mph to 140 mph.  Maxus Exhibit 3, p. 10.

4.     These winds caused extensive damage to the Waverly, including damage to the building envelope and roof structure, allowing wind and water to penetrate through wind-caused openings hours before the storm surge reached the property.  RSUI Exhibit I, p. 4.

5.     In addition, water leaking through the second floor damaged first floor ceiling insulation before the storm surge reached the equivalent height.  RSUI Exhibit I, p. 4.

6.     Hours later, when the flood waters eventually arrived, water rose to approximately 3 feet in the second story.  RSUI Exhibit G, p. 1.

7.     After the water receded, it was obvious that portions of the Waverly below the standing water line showed unmistakable wind damage, including damage to the exterior walls and finishes down to the floor level of the second story and damage to the walls and vinyl siding on the first and second floors.  Maxus Exhibit 4, pp. 90, 103, 123, 156.

8.     Photographs 73, 139, and 140 show damage to the first floor exterior which RSUI's expert, Milton, attributed to wind.  Maxus Exhibit 4, pp. 127, 131; Maxus Exhibit 7, Milton photographs 73, 139, and 140.

9.     Photographs 206 and 1419 are true copies of photographs taken by RSUI's expert, Albert Paxton, in support of his report.  Maxus Exhibit 8, Paxton Deposition, pp. 70, 71, 110, 112; Maxus Exhibit 9, Paxton photographs 206 and 1419.

8

10.     To rebuild the Waverly to its condition prior to Katrina will cost $14,465,115.03.

Maxus Exhibit 6, Dye Report, p. 1.

## IV.     RSUI'S NON-COMPLIANCE WITH SUMMARY JUDGMENT STANDARDS.

RSUI sets forth a perfunctory discussion of summary judgment standards that ignores

two fundamental defects in its motion for "partial summary judgment."  First, the motion must

be denied because it seeks relief not obtainable under Rule 56.  Second, and in any event, RSUI

has failed to present all the facts argued in support of its motion in accordance with the

requirements of Local Rule 56.1.

### A.     Motion Not Authorized By Rule 56.

The complaint by Maxus is in two counts.  Count I asserts a damage claim for breach of

contract based on the insurance policy sold by RSUI.  Count II states a claim for vexatious

refusal.  Although styling its motion as one for "partial summary judgment," RSUI does not seek

judgment on either of these claims.  In particular, RSUI never asserts that judgment should be

entered in its favor on the breach of contract claim.  Instead, RSUI in its motion requests a

laundry list of incremental relief involving questions of policy interpretation and the measure of

damages.  These subjects cannot be presented for decision by motion for summary judgment,

partial or otherwise.

"Summary judgment may be had as to one claim among many, but it is well settled that

neither subsection [Rule 56(a) or (b)] allows such a judgment as to one portion of a claim."

*Kendall McGaw Laboratories, Inc. v. Community Memorial Hospital*, 125 F.R.D. 420, 421

(D.N.J. 1989).  "Framing the motion as one for partial summary judgment does not cure the fatal

defect of moving for judgment on a portion of a claim."  *Capitol Records, Inc. v. Progress

Record Distributing, Inc.*, 106 F.R.D. 25, 28 (N.D. Ill. 1985).  "Rule 56(d) provides a method

whereby a court can narrow issues and facts for trial after denying in whole or part a motion

9

*properly* brought under Rule 56's other provision; it does not create a vehicle for the type of motion brought . . . in this case." *Id.* at 29 (emphasis added). Were it otherwise, "Rule 56(d) could be used to justify numerous and repetitive motions seeking to resolve limited factual issues in a piecemeal fashion. Such adjudications would not dispose of a claim or even become final until trial, and would waste judicial resources in almost every case." *Id.* Thus, "[a] Rule 56 movant may not 'play leapfrog' with his case by seeking a decision whose validity depends on one or more unresolved issues." *Kendall McGaw Laboratories,* 125 F.R.D. at 422.

A dispute between a policyholder and insurer regarding the policy coverage and payout for a particular incident presents a single claim, so partial summary judgment may not be entered as to an aspect of damages, even if allegedly beyond dispute. *Commonwealth Ins. Co. v. O. Henry Tent & Awning Co*., 266 F.2d 200 (7th Cir. 1959). Even where a motion raises "a very significant issue, its relative importance does not convert it into a 'claim, counterclaim or cross-claim'" suitable for relief under Rule 56. *New Jersey Automobile Ins. Plan v. Sciarra*, 103 F. Supp. 2d 388, 396 (D.N.J. 1998) (rejecting defendants' motion because "even if this issue was decided in their favor, it would not automatically dispose of any of Plaintiffs' claims").

In practical terms, the motion by RSUI is an attempt to beat down the value of Maxus' claim but without conceding or even joining issue on the threshold question of whether RSUI has breached the policy. A party's desire for early resolution of some issues so as to better evaluate the case does not justify deviation from Rule 56. A motion that begs the question of liability while seeking a pronouncement on the appropriate standard for damage computations is a pointless exercise which courts are to avoid, regardless of a movant's desire to gain settlement leverage. *See Kendall McGaw Laboratories*, 125 F.R.D. at 422-23 (collecting cases).

CC 1951418v1

**B.      Improper Presentation Of Facts.**

Local Rule 56.1 governs the form of summary judgment motions in this district. Local Rule 56.1(a) requires that suggestions in support begin with a concise statement of uncontroverted material facts: "*each* fact *shall* be set forth in a separately numbered paragraph." Local Rule 56.1(a) (emphasis added). The Rule further provides that "unless specifically controverted by the opposing party," all facts "set forth in the *statement* of the movant shall be deemed admitted for the purpose of summary judgment." *Id*. (emphasis added).

The motion by RSUI does contain what is described as a "Statement of Uncontested Facts." *See* RSUI Suggestions, pp. 4-13. However, not all alleged facts asserted by RSUI are set forth as required in the separate statement. Instead, the argument by RSUI departs from its statement and contains additional assertions of supposed fact that do not appear in the statement. *See, e.g.,* RSUI Suggestions, pp. 20-21. RSUI thereby attempts to create the illusion that its motion is based only on facts presented in accordance with Local Rule 56.1, but it is not.

RSUI's improper tactic is particularly apparent when it launches an attack on the credibility of Maxus' experts and evidence. RSUI Suggestions, pp. 20-22. RSUI well knows that such assertions are controverted and that such disputes will be particularly evident if those assertions are presented in separately numbered paragraphs for response. It is improper for RSUI to bury such contentions in its argument.

RSUI's attempt to argue the facts should be disregarded. Although Maxus has presented controverting facts in its statement of additional facts above (Section III), the local rule imposes no obligation for Maxus to respond directly to facts not set forth in a separate statement that complies with Local Rule 56.1. Moreover, and in any event, under prevailing norms of summary judgment practice, Maxus as the non-movant is entitled to have the record viewed in its favor. *RPM Leasing Corp. v. Coleman Powermate, Inc.*, 2007 WL 3072056 at *2 (W.D. Mo. 2007).

CC 1951418v1

## V. CHOICE OF LAW IS IMMATERIAL AT THIS JUNCTURE.

RSUI argues that Mississippi law applies (RSUI Memorandum at 14-16) but then proceeds to cite Missouri case law as well, apparently suggesting that choice of law may be immaterial. *See, e.g.,* RSUI Suggestions, pp. 22, 24; *see also id.* at 16 (Mississippi law on policy interpretation is consistent with laws of other states). At this juncture, choice of law is indeed immaterial because the outcome here is dictated by the presence of disputed material facts rather than any proposition of law. Moreover, the application of Mississippi law is an open question, as illustrated by two of RSUI's own authorities.

First, although Missouri follows the Restatement approach for choice of law, this does not mean that the place of the insured risk will necessarily be determinative. In *Viacom, Inc. v. Transit Casualty Co.*, 138 S.W.3d 723 (Mo. banc 2004), the Missouri Supreme Court found that the location of the policyholder's offices determined the applicable law in a case where the risk was spread over multiple states:

> Westinghouse was incorporated in Pennsylvania, where its insurance department was based. Many policies were contracted for and negotiated in Pennsylvania and issued through Pennsylvania brokers. The policies were delivered to Westinghouse in Pennsylvania and paid for there. Although the risk is spread over multiple states . . . , the parties could expect that the insured risk was predominantly located in Pennsylvania.

*Id.* at 725. In this case, Maxus is headquartered in Missouri, its broker is located here, and the policies were delivered in Missouri. *See* RSUI Exhibit D, PRES00140. Seven of the twenty-one insured properties were located in Missouri; only two properties were located in Mississippi. *See* RSUI Exhibit F.

Second, RSUI cites *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.*, 716 S.W.2d 348 (Mo. App. 1986), to support its contention that the law of the place of the insured risk should control, but in that instance, the place of the insured risk also happened to be

12

the forum state—unlike this case. Moreover, the choice of law analysis in *Crown Center Redevelopment Corp.* was particularly complicated because the suit included a multitude of parties and insurance policies, so the court found it more efficient to apply the law of the place of the insured risk rather than "to apply the law of numerous states in interpreting over 20 contracts which insure the identical risk." *Id.* at 359. By contrast, this case involves only two parties and one policy, so the choice of law analysis does not have to be driven by issues of case management.

Thus, RSUI's contention that the choice of law analysis should be dictated by the location of the insured risk is overstated. Because RSUI's motion should be denied as improper under Rule 56 and because of the many factual disputes, a definitive ruling on choice of law is simply unnecessary at this juncture.

## VI. MAXUS SEEKS COVERED DAMAGES EXCLUSIVELY ATTRIBUTABLE TO WIND; ANTI-CONCURRENT CAUSE LANGUAGE DOES NOT APPLY TO UNIQUE LOSSES FROM INDEPENDENT CAUSES.

All of the damages requested by Maxus in this case are attributable solely and exclusively to winds that caused substantial damage to the Waverly. Maxus' evidence shows that damaging winds preceded the arrival of flood waters or storm surge. In an effort to avoid liability for wind damage that occurred below the water line, RSUI contends that some portion of Maxus' claimed damages were instead caused by flood waters, storm surge, or some other combination of covered and excluded perils. This is a dispute about the cause of Maxus' damages, and as a result, there is a genuine issue of material fact that can only be decided by a jury. 7 Couch on Insurance 3d § 101:59 ("The majority of cases addressing causation disputes under an insurance policy hold that the causal relationship of a loss to a particular alleged instrumentality is a question of fact to be decided by the jury.").

Further, RSUI concedes that it bears the burden of proving the cause of the damage where it seeks to exclude any part of the loss under an "all risk" policy exclusion. RSUI Suggestions, pg. 23; *Leonard v. Nationwide Mutual Ins. Co.*, 499 F.3d 419, 429 (5th Cir. 2007) (citing *Commercial Union Ins. Co. v. Byrne*, 248 So. 2d 777, 782 (Miss. 1971)); *Poke v. Atlas Mutual Ins. Co.,* 760 S.W.2d 192, 193 (Mo. App. 1988) (reversing directed verdict for insurer because "[w]hen the insurer relies on an exclusion in the insurance contract as the ground to deny a claim, the burden is on the insurer to establish that the loss is within the policy exclusion"). With its motion, however, RSUI creatively attempts to avoid its burden of proof by classifying all damages below the water line as excluded flood damage—a dramatic oversimplification of the complex factual issues in this case. RSUI's own expert agrees that there is unique damage below the water line that was exclusively caused by wind, and RSUI cannot avoid its liability for this damage by pointing to a water line.

A. **RSUI's Own Expert Distinguishes Between Wind Damage and Water Damage and Acknowledges Damage below the Flood Line Attributable Exclusively To Wind.**

RSUI first argues that it is entitled to judgment that all damage below the water line was caused by flood because Maxus has "no facts to show . . . that the top 4 feet of the same storm surge was exclusively caused by wind." RSUI Suggestions, pp. 21-22. This is a mischaracterization. Maxus does not contend that any part of the storm surge was exclusively caused by wind, nor does it seek to recover for any damage caused by storm surge. All damage claimed below the water line was caused exclusively by wind. This damage would have been sustained even if the flood waters or storm surge had never reached the property, and it was recoverable under the policy from the moment that it occurred. *Pepper v. State Farm*, 2007 WL 1518078, *4 (S.D. Miss. 2007) ("if there is wind damage covered under a homeowners policy,

CC 1951418v1

the right to collect the insurance applicable to that damage would come into existence at the time the damage occurred").

In support of this argument, RSUI relies on a number of allegedly "undisputed" facts that do not appear in its Statement of Uncontested Facts, most of which allege that there is no distinction between wind and water damage below the water line. *See* RSUI Suggestions, pp. 20-21. This is factually inaccurate. RSUI's own expert, Jonathan Milton, acknowledges that there is unique damage below the water line caused exclusively by wind. *See, e.g.,* Maxus Exhibit 4, pp. 90, 103. Milton also references photographs that show damage to the first-floor exterior which he attributed to wind. Maxus Exhibit 4, pp. 127, 131 (referencing Maxus Exhibit 7). These photographs and testimony demonstrate that RSUI's own expert witness does not agree with its characterization of the cause of damage in this case. As a result, there are disputed issues of material fact that remain to be decided by a jury, and summary judgment is improper.

**B.      All Such Damage Attributable Exclusively to Wind—a Covered Peril—is Recoverable, and the Anti-Concurrent Cause Provision is Inapplicable, Where Independent Forces Caused Unique and Separate Damage.**

RSUI's second argument to preclude damage below the water line is based on the anti-concurrent cause language in the policy. RSUI argues that anti-concurrent causation provisions are enforced "when two or more events combine to cause a loss, and one of those events is excluded by the policy." While this may be an accurate interpretation of the policy language in the abstract, it simply has nothing to do with this case. The policy states:

> B.      Exclusions
>
> > 1.      We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that *contributes concurrently or in any sequence to the loss.*

CC 1951418v1

RSUI Exhibit D, PRES00179 (emphasis added). This language applies where a covered peril and an excluded peril combine to cause the *same* loss. The anti-concurrent cause language is not applicable in this case, and in most Hurricane Katrina cases, because wind—the covered peril— caused substantial and unique damage before flood waters arrived. *See* David P. Rossmiller, *Interpretation and Enforcement of Anti-Concurrent Policy Language in Hurricane Katrina Cases and Beyond,* New Appleman on Insurance: Current Critical Issues in Insurance Law, at 44, *available at* http://www.insurancecoverageblog.com/Anti-concurrent%20cause%20article %20II.pdf (forthcoming November 2007) ("But as the term concurrent causation is understood in legal analysis, the two chief agents of Katrina damage, wind and flood—the first covered by policies, the second excluded—are not in fact concurrent in most cases because they caused different damage and different losses."). Moreover, the later flooding did not contribute in any way to the loss that had already been sustained as a result of the wind.

Thus, although the Waverly was certainly damaged by both wind and water during Hurricane Katrina, these two independent forces did not act concurrently—that is, wind and water did not combine to cause the same damage. As shown above through expert testimony and photographic evidence, the wind caused separate and unique damage that occurred independently from the water damage. *See* Section VI.A., *supra*. Additional photographs taken by RSUI's other expert witness, Albert Paxton, show entire walls that were sheared off by wind, and this damage clearly extends below the flood line. *See* Maxus Exhibit 9. Photograph 73 shows significant wind damage to the second floor interior walls below the flood line in the lower 3-4 feet. These facts demonstrate the need to resolve factual disputes over what caused damage below the water line, and summary judgment for RSUI on this issue would be inappropriate.

16

RSUI relies on two cases to establish the validity and application of anti-concurrent cause provisions: *Leonard v. Nationwide Mutual Ins. Co.*, 499 F.3d 419 (5th Cir. 2007), and *Pakmark Corp. v. Liberty Mutual Ins. Co.*, 943 S.W.2d 256 (Mo. App. E.D. 1997). Both are inapposite to this case. *Pakmark* involved a flood that combined with the backup of sewage to cause the same property damage. The parties *conceded* that the causes acted concurrently to cause the same damage. *Pakmark*, 943 S.W.2d at 259 ("Both Pakmark's president and the insurance adjuster conceded that the damage to the property was from a combination of sewer backup and flood water.") Since the parties agreed upon the very issue that is disputed in this case, *Pakmark* does not provide any basis for granting summary judgment.

RSUI's reliance on *Leonard* is equally misguided. First, *Leonard affirms* the trial court's verdict allowing the plaintiffs to recover all damage exclusively caused by wind *Leonard*, 499 F.3d at 423. Second, *Leonard* is factually inapposite to this case. The Leonard's home "suffered broken shingles . . . but its water-tight integrity was not compromised." *Id.* at 426. As a result, the *Leonard* court found that it was "undisputed that the lion's share of the losses to the Leonard's property would not have occurred but for the storm surge damage." *Id.* at 434, n.9. In contrast, Maxus' evidence shows that the Waverly sustained unique and extensive losses solely and exclusively as the result of wind, and these losses would have been sustained even if the storm surge had never reached the property. There is no question that the "water-tight integrity" of the Waverly was compromised. Entire walls were sheared off and whole sections of roof were blown away. This damage is entirely recoverable under *Leonard*, and *Leonard* provides no basis for this Court to preempt the factual disputes that remain as to the cause of damage below the water line.

CC 1951418v1

Rather than relying on the true holding in *Leonard*, RSUI seizes upon dicta offered by the court in response to a hypothetical posed in the district court's opinion. *Id.* at 431. This statement is neither persuasive nor controlling here for several reasons. First, it is a classic example of the perils of dicta. The hypothetical is completely unrelated and factually distinct from the damage that the Leonard's home sustained. The court attempts to resolve a scenario where interior damage is caused by rain after the policyholder's roof is blown off. *Id.* The Leonard's home, however, remained water-tight and would not have sustained any such damage. *Id.* at 426.

Second, the hypothesized facts in the *Leonard* dicta do not resemble the facts in this case. The hypothetical suggests that covered rain damage becomes non-recoverable if flood later inundates the same rain-damaged area "because the loss was caused concurrently or in sequence by the action of a covered and excluded peril." *Id.* at 431. The *Leonard* court is assuming that a single loss was sustained as the result of a combination of rain and flood, arguably bringing the damage within the scope of the anti-concurrent cause provision. *In contrast, Maxus has alleged and can prove separate and unique damage caused solely and exclusively by wind*. The flood or storm surge did not contribute to Maxus' wind damage, or vice versa, and thus the two forces did not act concurrently or in any sequence to bring about the loss. The loss caused by the wind is different and separate from the loss caused by flood, and the loss caused exclusively by wind is recoverable.

Finally, it is not even clear that Mississippi law will be applied here. *See* Section V, *supra*. Additionally, *Leonard* would not control even if Mississippi law governs this dispute, since it is merely "an educated '*Erie* guess' as to how the Mississippi Supreme Court would resolve the issue." *Leonard,* 499 F.3d at 431. This Court is not bound by the *Leonard* decision,

18

which is at most persuasive authority and only to that extent the court's guess can be validated by Mississippi law.

> **C.** **RSUI Bears the Burden of Proving That the Anti-Concurrent Cause Provision Applies to Exclude Any Part of Maxus' Damages, and RSUI Has Not Proven That All Damages Below the Water Line are Excluded.**

Even if the anti-concurrent causation provision were applicable to this set of facts, RSUI could not avoid liability by merely reciting its policy language and pointing to the water line. The anti-concurrent cause provision is an exclusion, and RSUI has acknowledged that it must bear the burden of proving the exclusion applies under an "all risk" policy provision. RSUI Suggestions, p. 23. It is clear that both Mississippi and Missouri require the insurer to prove that a policy exclusion applies. *See Leonard*, 499 F.3d at 429 ("The insurer bears the burden of proving that a particular peril falls within a policy exclusion; the insurer must plead and prove the applicability of an exclusion as an affirmative defense.") (citing *Commercial Union Ins. Co. v. Byrne*, 248 So. 2d 777, 782 (Miss.1971)); *Poke,* 760 S.W.2d at 193 ("burden on insurer to establish that the loss is within the policy exclusion"). RSUI has not met this burden of proof with regard to the applicability of the anti-concurrent cause provision. There are disputed issues of material fact related to the cause of Maxus' damages, both above and below the water line, and these issues are properly before a jury. As a result, RSUI's request for summary judgment to preclude all damage below the water line should be denied.

## VII. COVERAGE IS NOT LIMITED BY THE STATEMENT OF VALUES.

RSUI argues that its liability for damage to the Waverly is limited to the Statement of Values because the underlying FSIC policy so provides. RSUI Suggestions, p. 25. Although the RSUI policy generally follows form to the FSIC policy, RSUI's policy explicitly states that it *does not follow form* to the FSIC policy with respect to *limits of liability. See* RSUI Exhibit E, Excess Physical Damage Coverage Form, Number 5 ("this Policy is subject to those same

CC 1951418v1

warranties, terms and conditions (except as regards the premium, the amount and *limits of liability* other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any; and EXCEPT AS OTHERWISE PROVIDED HEREIN)"; emphasis added); *see also* Maxus Exhibit 2, p. 85.

Therefore, the Limit provision of RSUI's own policy governs the limits that Maxus can recover for the Waverly. "[T]he limits of the Company's liability shall be those set forth in Item 7 under the designation 'Limit Insured' and the Company shall be liable to pay the ultimate net loss *up to the full amount of such 'Limit Insured.'* RSUI Exhibit E, PRES00012, Number 2 (emphasis added). The "Limit Insured" is "$189,417,773 Per Occurrence." RSUI Exhibit E, PRES00012, Number 7; *see also* Maxus Exhibit 2, p. 90. Thus despite RSUI's argument to the contrary, Maxus can recover up to $189,417.773 for the damage it sustained.

Noticeably missing from RSUI's argument is any citation to its policy to support its claim that Maxus is limited to the Statement of Values. Because such language is not in the policy, RSUI cannot now claim it intended to so limit its liability. *See Progressive Gulf Ins. Co. v. We Care Day Care Center, Inc.*, 953 So. 2d 250, 254 (Miss. Ct. App. 2006) (stating that insurance policies seeking to limit coverage are strictly construed and must be written with clear and unmistakable language); *Barron v. Shelter Mut. Ins. Co.,* 230 S.W.3d 649, 651-52 (Mo.App. W.D. 2007) (stating that a contract is enforced as written according to the plain and ordinary meaning of the contract's language).

One of the cases cited by RSUI illustrates what language is missing from the RSUI policy, thereby negating its argument here for limited liability. Specifically, in *Fair Grounds Corp. v. Travelers Indemn. Co. of Illinois,* 742 So. 2d 1069 (La.App. 5th Cir. 1999), the underlying policy's occurrence limit of liability endorsement is the same as the one in FSIC's

policy, but the excess policy references a statement of values as a limit of its liability and contains a different loss payment clause than the RSUI policy. *Id.* at 1071-72. The RSUI excess policy does not limit its liability to a Statement of Values, rather setting its limits to "those set forth in Item 7 under the designation 'Limit Insured,'" which in turn is "$189,417,773 Per Occurrence." *See supra*; *see also* Maxus Exhibit 2, p. 90. The different result in *Fair Grounds* is therefore directly attributable to this key difference in policy language.

Finally, RSUI fails to provide any Mississippi case law to support its argument. RSUI's abstract citation to cases discussing scheduled versus blanket policies—based on language not included in the RSUI policy—is immaterial to any argument in this case. See *Reliance Nat. Indemn. Co. v. Lexington Ins. Co.*, 2002 WL 31409576, *7 (N.D.Ill. Oct. 23, 2002); *Anderson Mattress Co., Inc. v. First State Ins. Co.*, 617 N.E.2d 932, 936-37 (Ind. Ct. App. 1993); *Simon v. National Union Fire Ins. Co.*, 782 N.E.2d 1125, 1128-29 (Mass App. Ct. 2003).

## VIII.   MAXUS IS ENTITLED TO CHOOSE REPLACEMENT COST VALUE.

RSUI's argument that Maxus is not entitled to replacement cost value is yet another example of how RSUI's Motion presents nothing cognizable under Rule 56. There is nothing upon which a summary judgment can be entered without trial because the parties dispute the extent of covered damage and the value of the property and because the determination of replacement cost value is a prerequisite to the calculation of actual cash value. Without knowing what the replacement cost value is, Maxus is not in a position to determine if it will choose replacement cost value or actual cash value.

Determination of replacement cost value is the foundation for any policy payout, whether for replacement cost value or actual cash value. Actual cash value is not defined in this policy. RSUI concedes that it is "well-settled that actual cash value is equal to the replacement cost

value of the property, less depreciation." RSUI Suggestions, p. 30. RSUI is improperly trying to limit Maxus to a value that has not itself been determined.

RSUI argues that Maxus is not entitled to replacement cost value unless it makes repairs to the Waverly. RSUI Suggestions, p. 30. Maxus agrees. However, the FSIC policy provides Maxus with the option of choosing replacement cost value or actual cash value. RSUI Exhibit D, PRES00165-00166, Section G(3)(c). Maxus has not been afforded the opportunity to make a choice as to whether it will replace because RSUI and Maxus have not been able to agree on a replacement cost value. Maxus Exhibit 1, p. 99. Once Maxus receives a verdict, it will then decide whether to accept replacement cost value or actual cash value. As a matter of law, it is not reasonably possible to repair the property until Maxus is apprised of the replacement cost value, either by adjudication or agreement.

## IX.    RSUI HAS NO SET-OFF FOR FLOOD INSURANCE PROCEEDS.

Without conceding that it has any liability under the policy (*see* Section IV.A., *supra*), RSUI nevertheless "leapfrogs" to an argument that it is entitled to reduce its contractual obligation to pay for wind damage to the Waverly based on the flood policy proceeds recovered by Maxus.[4] Although RSUI contends that it is entitled to a set-off equal to the Hartford's payment of $4,250,000 for flood damage sustained at the Waverly (RSUI Suggestions, p. 32), RSUI once again fails to cite to any policy provision to support its contention.

RSUI's argument begins with the faulty premise that the limit of recovery for Maxus is the $6,588,160 listed in the Statement of Values for the Waverly. RSUI Suggestions, p. 32. As

---

[4] By definition, excess insurance is reduced by the primary policy payment. There is no dispute that RSUI is entitled to a $600,000 set-off for Maxus' recovery for the Waverly under the FSIC policy.

CC 1951418v1

Maxus has demonstrated, this allegation finds no support in the record or the policies at issue. *See* Section VII, *supra*.

It will cost Maxus $14.4 million to rebuild the Waverly Apartments. Maxus Exhibit 6, Dye Report, p. 1. The amount Maxus seeks from RSUI for wind damage ($7.7 million not including business interruption), plus the $4.25 million received from the flood policies, still falls well below the estimated cost to restore the property. Maxus Exhibit 6, p. 1. This is not a windfall for Maxus, and RSUI has offered no evidence to support its allegation of any such windfall profits. Maxus paid separate premiums for separate policies covering different risks—flood and wind/hail. Neither policy is excess to the other, so there is no double recovery. Maxus will not profit from recovering under both the RSUI and flood policies.

RSUI has pointed to no policy provision granting it the right to a set-off for flood insurance payments. As RSUI's own authority states, if the words of a contract are not ambiguous, courts will give insurance policies their plain and ordinary meaning. RSUI Suggestions, p. 16. Insurance policies are contracts and are to be enforced according to their provisions. *Anglin v. Gulf Guaranty Life Ins. Co.*, 956 So. 2d 853, 859 (Miss. 2007); *see also Missouri Employers Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 625 (Mo.App. W.D. 2004) (stating that when interpreting an insurance contract, court is to enforce contract as written giving the insurance contract its plain and ordinary meaning). The RSUI policy does not contain language entitling RSUI to the set-off it seeks.

In effect, RSUI is now claiming to be a third-party beneficiary of the flood policy, but it has provided no evidence that the Harford and/or Maxus intended RSUI to be a third-party beneficiary. *Milligan v. Chesterfield Village GP, LLC*, 232 S.W.2d 683, 692 (Mo. App. 2007) ("it is strongly presumed that the third party is not a beneficiary and the parties contracted only

to benefit themselves"). Without an agreement to the contrary, RSUI should not derive any benefit as a third party to the Hartford flood policies.

Finally, RSUI's citation of cases from other jurisdictions holding that insurance is not intended to provide a profit to insureds is meaningless here, where RSUI has no evidence of such profit. Moreover, one of RSUI's cases actually suggests that, in any event, RSUI's Motion should be denied because it raises factual issues. In *Ferguson v. State Farm Ins. Co.,* 2007 WL 1378507, *2 (E.D. La. May 9, 2007), plaintiffs filed claims under both their homeowners policy and flood policy after Hurricane Katrina reduced their home to a slab. *Id.* The court held that plaintiffs were not estopped from making claims under both policies and that "the apportionment of loss due to wind and water is a factual matter for the jury." *Id.* at *3.

## X.    CONCLUSION.

Accordingly, for any one or more of the reasons set forth above, RSUI's Motion for Partial Summary Judgment should be denied.

Respectfully submitted,

s/ Michael J. Abrams
Michael J. Abrams    Mo. Bar No. 42196
mabrams@lathropgage.com
Amy Greenstein    Mo. Bar No. 59469
agreenstein@lathropgage.com
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, MO 64108
(816) 292-2000
(816) 292-2001 FAX
ATTORNEYS FOR PLAINTIFF
MAXUS REALTY TRUST, INC.

24

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Courtney E. Murphy
Clausen Miller P.C.
One Chase Manhattan Plaza, 39th Floor
New York, NY 10005
(212) 805-3908
(212) 805-3939 Facsimile

George E. Wolf
Douglas S. Beck
Kelly G. Bieri
Shook, Hardy & Bacon L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550
(816) 421-5547 Facsimile

ATTORNEYS FOR DEFENDANT
RSUI INDEMNITY COMPANY


Date:   November 16, 2007            s/ Michael J. Abrams
                                     Attorneys for Plaintiff

CC 1951418v1