IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MAXUS REALTY TRUST, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-0750-CV-W-ODS |
| ) | |
| RSUI INDEMNITY COMPANY, ) | |
| ) | |
| Defendant. ) | |

<u>ORDER AND OPINION DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Pending before the Court is Defendant's Motion for Partial Summary Judgment (Doc. # 75). For the following reasons, Defendant's motion is DENIED.

<u>I. BACKGROUND</u>

The above-captioned matter is an insurance coverage dispute over the nature, scope, and amount of excess commercial property coverage provided by an insurance policy purchased by Plaintiff from Defendant. Plaintiff owns the Waverly Apartment complex ("Waverly"), a Mississippi property ravaged by high winds, rain and flooding during Hurricane Katrina. Plaintiff seeks to recover under a policy it purchased from Defendant (the "RSUI policy") for the portions of the damage caused exclusively by wind. The RSUI policy is excess to a primary policy of insurance issued by First Specialty Insurance Company (the "FSIC policy"). The FSIC policy provided $2,500,000 in coverage. Upon exhaustion of that policy, the RSUI policy provided the next layer of coverage up to $189,417,773. The RSUI policy follows the form of the FSIC policy, in that it is subject to the same warranties, terms, and conditions as the FSIC policy, except as otherwise provided in the RSUI policy. Defendant's motion seeks a number of rulings limiting the total amounts recoverable by Plaintiff under the

RSUI policy.[1]

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

*A. Anti-Concurrent Causation Provision*

Both the FSIC and RSUI policies exclude coverage for loss or damage caused by flood. Additionally, the policies contain what is termed an anti-concurrent causation provision ("ACC"), which excludes coverage for loss or damage caused by flood

---

[1] Plaintiff argues that because Defendant's motion will not resolve either of the claims brought by Plaintiff in their entirety, the motion seeks relief not obtainable under Rule 56. However, the legal determinations sought by Defendant could greatly narrow the issues for trial and will therefore be addressed by the Court.

2

"regardless of any other cause or event that contributes concurrently or in any sequence to the loss." See RSUI policy at Exhibit E, Item 3; FSIC policy at Exhibit D, Causes of Loss – Windstorm or Hail, Section B(1)(g). In other words, the policies exclude coverage for flood damage even if another non-excluded cause contributes concurrently or in any sequence to the loss. Accordingly, the only type of hurricane-related damage covered is that caused exclusively by wind.

Defendant seeks a ruling that any damages to the Waverly caused exclusively, concurrently or in any sequence of the loss, by flood, are excluded from coverage under the RSUI policy. Defendant, therefore, asks the Court to enforce the ACC. Courts in Mississippi[2] and Missouri uniformly agree that unambiguous provisions that preclude coverage for losses caused directly or indirectly by an excluded event "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" are enforceable. See Leonard v. Nationwide Mutual Ins. Co., 499 F.3d 419 (5th Cir. 2007); Pakmark Corp v. Liberty Mutual Ins. Co., 943 S.W.2d 256 (Mo. Ct. App. 1997). The issue, however, is not whether the ACC is enforceable in the abstract, but whether it applies in this case.

An uncontested waterline shows that water from the flood rose approximately four feet into the second story of the Waverly. In other words, the entire first floor of the property and four feet of the second floor were entirely submerged by flood waters. Therefore, Defendant argues that Plaintiff may not recover for any damage to the Waverly that is below this uncontested waterline. In essence, Defendant argues the ACC precludes recovery for damage that would have inevitably occurred anyway as a result of the ensuing flood, even if the flood damage was preceded by wind damage.

Conversely, Plaintiff submits that damaging winds preceded the arrival of flood waters or storm surge, and that this wind caused losses that would have occurred

---

[2] Defendant contends that Mississippi law will apply in this case under Missouri's choice-of-law rules. Plaintiff argues that this may not be so; however, Plaintiff does not argue that application of a different state's law will alter the outcome in the case. Accordingly, at this juncture, it is not necessary for the Court to make a definitive ruling on the issue.

3

regardless of the subsequent flood damage. Plaintiff only seeks to recover for loss caused exclusively by wind. Therefore, Plaintiff argues that these losses are not implicated by the ACC. See David P. Rossmiller, *Interpretation and Enforcement of Anti-Concurrent Policy Language in Hurricane Katrina Cases and Beyond*, New Appleman on Insurance: Current Critical Issues in Insurance Law, at 44, *available at* http://www.insurancecoverageblog.com/Anti-concurrent%20cause%20article%20II.pdf (November 2007) ("But as the term concurrent causation is understood in legal analysis, the two chief agents of Katrina damage, wind and flood–the first covered by policies, the second excluded–are not in fact concurrent in most cases because they caused different damage and different losses."). The Fifth Circuit, in Tuepker v. State Farm Fire & Casualty Co., explained the effect of the ACC as follows:

> [A]ny damage caused exclusively by a non-excluded peril or event such as wind, not concurrently or sequentially with water damage, is covered by the policy, while all damage caused by water or by wind acting concurrently or sequentially with water, is excluded. Thus, the ACC Clause in combination with the Water Damage Exclusion clearly provides that indivisible damage caused by both excluded perils and covered perils or other causes is not covered. However, . . . . if wind blows off the roof of [a] house, the loss of the roof is not excluded merely because a *subsequent* storm surge later completely destroys the entire remainder of the structure; such roof loss occur[red] in the absence of [an excluded peril].

No. 06-61075, 2007 U.S. App. LEXIS 25786, at *21 (5th Cir. Nov. 6, 2007).

Accordingly, the presence of a water-line does not establish that all damage occurring below that water-line is excluded by the ACC. Rather, there is a factual dispute over what caused damage below the water line and when, making summary judgment for Defendant on this issue inappropriate.

*B. Occurrence Limit of Liability Endorsement*

The underlying FSIC policy explicitly contains an Occurrence Limit of Liability Endorsement ("OLLE"). The OLLE expressly limits Plaintiff's recovery to the values set forth in the latest Statement of Values on file with FSIC, which provides separate recoverable limits on a replacement cost basis at each of the locations insured by and

4

scheduled within the FSIC policy. The OLLE expressly limits Plaintiff's recovery to the Statement of Values on file for the Waverly to $6,588,160. While the RSUI policy does not itself contain an OLLE, Defendant seeks a ruling by this Court that the RSUI policy follows the form of the FSIC policy with respect to the OLLE, thereby limiting Plaintiff's recoverable damages to this amount under the RSUI policy as well.

Plaintiff, on the other hand, claims that the RSUI policy does not follow the form of the FSIC policy with respect to limits of liability. Specifically, the RSUI policy states "this Policy is subject to those same warranties, terms and conditions (except as regards the premium, the amount and *limits of liability* other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any; and EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy(ies) of the primary insurer(s)" (emphasis added). See RSUI Policy at Exhibit E, Excess Physical Damage Coverage Form. Therefore, argues Plaintiff, the Limit provision of RSUI's own policy governs the limits Plaintiff can recover for the Waverly.

The RSUI policy states "the limits of the Company's liability shall be those set forth in Item 7 under the designation 'Limit Insured' and the Company shall be liable to pay the ultimate net loss up to the full amount of such 'Limit Insured.' See RSUI Policy at Exhibit E, Number 2. The "Limit Insured" is "$189,417,773 Per Occurrence." See RSUI Policy at Exhibit E, Number 7. Plaintiff argues, therefore, that it can recover up to $189,417,773 for the damage sustained. Defendant does not explain what effect the language, "except as regards the . . . limits of liability," has on the issue of whether the RSUI policy follows the form of the FSIC policy with respect to the Occurrence *Limit of Liability* Endorsement. Accordingly, at this time the Court is not inclined to interpret the policy as Defendant has requested in its motion.

*C. Actual Cash Value vs. Replacement Cost Value*

Defendant also seeks a ruling that to the extent Plaintiff sustained a covered loss, Plaintiff is entitled to payment for such damage only on an actual cash value ("ACV") basis, and not on a replacement cost value ("RCV") basis. Both parties agree that Plaintiff is not entitled to recover RCV unless and until it makes repairs to the

5

Waverly. Additionally, Plaintiff must make the repairs as soon as reasonably possible after the loss or damage. See FSIC Policy at Ex. D., Building and Personal Property Coverage Form Section G(3). Both parties also agree that, at this time, no repairs have been made. However, the Court is unwilling to rule, as a matter of law, that Plaintiff has been unreasonable in not repairing the property by this date. Accordingly, it cannot be determined whether Plaintiff will recover, if at all, based on an ACV or a RCV basis.

### *D. Set-Off*

Finally, Defendant argues that it is entitled, as a matter of law, to a set off for all amounts previously paid to Plaintiff for damage sustained by the Waverly. Plaintiff has received $2,500,000 from FSIC, of which approximately $600,000 was applied towards the Waverly. Plaintiff agrees that, by definition, excess insurance is reduced by the primary policy payment. Thus, Plaintiff does not dispute that Defendant is entitled to a $600,000 set-off for Plaintiff's recovery for the Waverly under the FSIC policy. Plaintiff also received approximately $4,250,000 from Hartford Fire Insurance Company for damages caused to the Waverly by flood. Defendant contends it should be able to set-off this award as well so that Plaintiff does not get a "double recovery." However, as both parties agree, any amount still owed by Defendant will be for damages caused exclusively by wind, not for those caused by flood. Accordingly, Defendant has no right to a set-off for money Plaintiff has received for damages caused by flood. The Court denies Defendant's motion for summary judgment on this issue.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is DENIED.

6

IT IS SO ORDERED.

                                      /s/ Ortrie D. Smith  
                                      ORTRIE D. SMITH, JUDGE  
DATE: December 17, 2007          UNITED STATES DISTRICT COURT